# United States Court of Appeals
## For the First Circuit

No. 10-1353

UNITED STATES,

Appellee,

v.

PHOEUN LANG,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Robert C. Andrews for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Thomas E.
Delahanty II, United States Attorney, was on brief, for appellee.

February 16, 2012

**THOMPSON**, **Circuit Judge**. A jury found defendant Phoeun Lang ("Lang") guilty of making false statements and applying for naturalization in violation of 18 U.S.C. §§ 1001(a)(2) and 1425(b). On appeal, Lang makes the following three arguments: (1) the admission of immigration form N-445 violated his Sixth Amendment right to confrontation, (2) the admission of immigration form N-445 under the public records exception to hearsay was error,[1] and (3) the government's repeated reference to his prior conviction was unfairly prejudicial. Discerning no error, we affirm.

## I.        BACKGROUND

Accompanied by his parents, Lang arrived in the United States in 1985 at age three as a refugee. In time, his status changed and he became a lawful permanent resident. Seeking to become a United States citizen, Lang submitted an Application for Naturalization form, also known as the N-400. Thereafter, on July 18, 2005, Lang went to the Citizenship and Immigration Service's ("CIS") office in South Portland, Maine and under oath, verbally

---

[1]In his brief to this court, Lang challenged the admission of both forms N-400 and N-445. However, form N-400 is not hearsay. See Fed. R. Evid. 801(c). For starters, the CIS officer who went over the N-400 with Lang testified at trial regarding the verification procedure used to confirm Lang's responses. See discussion infra Part I. Furthermore, and as the government points out in its brief, the remaining portion of form N-400 consisted of Lang's answers to the questions asked and therefore constitute admissions of a party opponent and are not hearsay. See Fed. R. Evid. 801(d)(2)(A). Absent any authentication argument, which Lang fails to advance, there is no merit in his argument that form N-400 was improperly admitted. Consequently, our analysis is concerned only with the admissibility of form N-445.

-2-

went over the N-400 "question-by-question" with CIS field office director Dorothy Michaud ("Michaud"), a 33 year employee of CIS.[2] CIS policy requires that its officers verify that they have reviewed each individual question with the applicant. This verification procedure is done by placing a red checkmark next to every question after it has been confirmed by the applicant.

One section of the N-400 asked questions related to an applicant's "good moral character."[3] Michaud explained at trial that these questions "are designed so that [CIS] can elicit a response as to whether [any applicant] has been involved in any type of criminal activity . . . [t]hat may render them ineligible for naturalization." Question 15 on the N-400 asked, "Have you ever committed a crime or offense for which you were not arrested?" The box marked "No" was checked. After discussing the specific question with Lang and confirming his negative response, Michaud put a checkmark next to the answer. Question 22c asked, "Have you ever sold or smuggled controlled substances, illegal drugs or narcotics?" Once again, Lang had checked "No" and Michaud verified

---

[2]CIS came into existence under the Department of Homeland Security in 2008. Prior to that time, the agency was referred to as the Immigration and Naturalization Service.

[3]Pursuant to 8 U.S.C. § 1427(a)(3), all applicants must establish good moral character dating back five years prior to the filing of their application for naturalization up until the date of their naturalization ceremony.

his answer by placing a checkmark next to it.[4]  After confirming the rest of Lang's responses[5] and addressing some miscellaneous administrative issues,[6] Michaud recommended that Lang's application be granted.

With the N-400 application portion of the naturalization process completed satisfactorily, Lang was notified by means of an N-445 form of an upcoming oath ceremony, which he was required to attend.  The N-445 also contained a series of questions which Lang had to complete.  The purpose of the questions  was to confirm that the applicant had maintained good moral character from the completion of the N-400 interview up until the day of the swearing-in ceremony.  Question 4 on the N-445 asked, **"AFTER the date you were first interviewed on your Application for Naturalization, Form N-400**: Have you been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, including traffic violations?"  The box marked "No" was checked.

---

[4]Lang did, however, admit that he had been arrested and charged with driving while intoxicated and that he had also failed to pay a fine.  This information required that Lang's application be reviewed by a supervisor before being approved.

[5]Because Michaud had made some changes to Lang's N-400 application, she gave the form back to Lang, asked him to review the changes and answers once more, and then put him under oath for a second time to swear to the contents of the application.

[6]These included oath requirements, signature confirmation, satisfactory completion of a naturalization testing form, as well as reading and writing proficiency tests, and the presentation of supplemental documentation.

Though Michaud was not present for Lang's swearing-in ceremony, she was nonetheless familiar with the standard procedure for that day due to her ten years of experience in processing naturalization applications, as well as training other CIS officers. At trial, she outlined the standard protocol: (1) an officer reviews the questions and answers with the applicant, (2) the applicant's responses are confirmed, (3) after the responses are confirmed, they are checked in red by the officer, and (4) the officer confirms that the signature on the N-445 matches the signature on the Certificate of Naturalization, which is signed before the ceremony. Upon completion of the N-445, the applicant takes part in two ceremonies, one administrative, the other judicial. Having successfully completed both the N-400 and N-445 applications, Lang was naturalized on March 17, 2006.

Unbeknownst to Michaud, or for that matter any other CIS officer, Lang had distributed cocaine twice in late 2004 and once in early 2005. Consequently, his responses to Questions 15 and 22c on the N-400, which he reviewed with Michaud on July 18, 2005, were false. Similarly, Lang's response to Question 4 on the N-445 was false because on August 8, 2005, in between the N-400 interview and Lang's oath ceremony, Lang had been arrested for distributing cocaine and amphetamines.[7]

---

[7]On October 9, 2007, Lang pled guilty to three counts of distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). He was sentenced to one year and one day in prison, three years of supervised release, and ordered to pay a three

Lang was indicted on two counts of making a material false statement to the Department of Homeland Security ("DHS") in violation of 18 U.S.C. § 1001(a)(2) and one count of unlawfully applying for and obtaining naturalization and a certificate of naturalization in violation of 18 U.S.C. § 1425(b). At trial, both the N-400 and N-445 forms were admitted into evidence over Lang's objections. Michaud testified that if she had known about Lang's prior involvement in distributing cocaine, she "would have changed his response[s] . . . from no to yes." Moreover, Michaud testified that had CIS determined that Lang had previously been involved with cocaine distribution, "his application would have been denied" because "[h]e would not have been found to have met the good moral character requirement."

Lang was found guilty on all counts. He renewed his motion for judgment of acquittal but was denied.[8] Thereafter, he was sentenced to four months at the Bureau of Prisons and two years of supervised release.[9] This appeal followed.

---

hundred dollar assessment.

[8]Lang had made two previous oral Rule 29 motions for judgment of acquittal -- once at the conclusion of the government's case and again at the close of the evidence -- both were denied.

[9]Lang was sentenced to four months' imprisonment and two years of supervised release on each of the three counts; however, those sentences ran concurrently.

**II.       DISCUSSION**

A.        Confrontation Clause Challenge

Lang's first argument on appeal is that the admission of form N-445 violated his constitutional right to confront the witnesses against him.   According to Lang, the CIS agent's "statements" in the N-445 form -- specifically, the verification checkmarks next to Lang's responses -- were admitted to prove that he made false statements to CIS.   As such, they were testimonial hearsay requiring that the CIS officer who verified Lang's responses, not Michaud, be present at trial and subject to cross-examination.[10]

This court "review[s] the district court's legal conclusions regarding the Confrontation Clause de novo."  United States v. Earle, 488 F.3d 537, 542 (1st Cir. 2007).   Under this standard, "[i]f a constitutional error has occurred, we must order a new trial unless the government has shown that any error was 'harmless' beyond a reasonable doubt."  Id.

"The Sixth Amendment's Confrontation Clause confers upon the accused in all criminal prosecutions . . . the right . . . to be confronted with the witnesses against him." Bullcoming v. New Mexico, 131 S. Ct. 2705, 2713 (2011) (internal quotation marks and citation omitted).   In Crawford v. Washington, 541 U.S. 36 (2004),

---

[10]Lang cannot, and does not, take issue with the answers he provided on the form.  These responses constitute admissions of a party opponent and therefore, are not hearsay.  See Fed. R. Evid. 801(d)(2)(A).

the Supreme Court "held that the Confrontation Clause bars admission of testimonial hearsay in a criminal case unless the declarant is unavailable and the accused has had a prior opportunity for cross-examination." Earle, 488 F.3d at 542 (citing Crawford, 541 U.S. at 68). Post-Crawford, the Court has "held that the Confrontation Clause applies only to testimonial hearsay." Id. (citing Davis v. Washington, 547 U.S. 813, 823-24 (2006)). Accordingly, when we are faced with a Crawford argument, our analysis includes consideration of "whether the out-of-court statement was testimonial." Id.

Thus far, the Supreme Court has declined to supply "a comprehensive definition of 'testimonial.'" Crawford, 541 U.S. at 68; see also Davis, 547 U.S. at 822. The Court has, however, provided an illustrative list of the "core class of 'testimonial' statements." Crawford, 541 U.S. at 51. It includes (1) "ex parte in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51-52 (internal quotation marks

-8-

and citation omitted). Besides providing an illustrative list of statements that were "testimonial," the Court acknowledged that certain statements, "by their nature [are] not testimonial -- for example, business records or statements in furtherance of a conspiracy[,]" and are therefore exempt from the requirements of the Confrontation Clause. Id. at 56. Mindful of Crawford's bottom line, this court, in determining whether a statement is "testimonial," inquires whether "an objectively reasonable person in the declarant's shoes would understand that the statement would be used in prosecuting the defendant at trial." Earle, 488 F.3d at 543.

In ruling that the N-445 did not violate the Confrontation Clause and was therefore admissible, the district court stated that, "Crawford . . . very explicitly distinguished [business records] as not testimonial." Finding "no distinction" between business records and public records for purposes of the Confrontation Clause, the court concluded that the N-445 form was not testimonial.[11] We agree that the executed N-445 form was not testimonial.

---

[11]The court did note, however, that "one distinction" between business records and public records would be if the N-445 was a "law enforcement type document" and therefore fell under the law enforcement exception to Rule 803(8). As discussed infra, the district court ultimately concluded that the law enforcement exception was not applicable to either form N-400 or N-445. See discussion infra Part II.B.

According to Agent Michaud, CIS processes thousands of citizenship applications annually and uniformly throughout the United States. Every applicant seeking naturalization must complete form N-445 and a CIS agent must verbally verify with the applicant the accuracy of the applicant's written answers before a final approval for citizenship can be given. The red checkmark next to the applicant's response demonstrates the CIS agent's compliance with the administrative protocol and the form is kept permanently in every applicant's file. That said, we find unpersuasive Lang's suggestion that the red checkmark verification method used by the CIS officer was a testimonial statement and that the N-445 was "primarily to be used in court proceedings." Instead, we are convinced that Lang's N-445 form, like all others similarly generated, was a non-testimonial public record produced as a matter of administrative routine, for the primary purpose of determining Lang's eligibility for naturalization. See discussion infra, Part II.B. Accordingly, "an objectively reasonable person in the [CIS agent's] shoes would [not] understand that the [form] would be used in prosecuting [Lang] at trial." Earle, 488 F.3d at 543. The form was not testimonial. See Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527, 2539-40 (2009) (stating that business and public records "are generally admissible absent confrontation . . . because -- having been created for the administration of an entity's affairs and not for the purpose of

-10-

establishing or proving some fact at trial -- they are not testimonial").

Furthermore, this court has previously rejected a Confrontation Clause argument regarding the admission of an immigration document. See United States v. García, 452 F.3d 36, 41-42 (1st Cir. 2006) (holding that admission of warrant of deportation was not in error because document did not constitute testimonial hearsay under Crawford). A few of our sister circuits have held the same. See United States v. Valdez-Maltos, 443 F.3d 910, 911 (5th Cir. 2006) (warrants of deportation do not constitute testimonial hearsay under Crawford); United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (same), cert. denied, 547 U.S. 1056 (2006); United States v. Cantellano, 430 F.3d 1142, 1145 (11th Cir. 2005) (warrant of deportation not testimonial because it was "recorded routinely and not in preparation for a criminal trial") (citation and internal quotation marks omitted); United States v. Quezada, 452 F.3d 36, 42 (5th Cir. 1985) (holding that a warrant of deportation was reliable and admissible because the official preparing the warrant had no motivation to do anything other than "mechanically register an unambiguous factual matter"). Because the N-445 form was not testimonial, its admission did not violate Lang's constitutional right to confrontation. There was no error.

B.        Evidentiary Challenge

Having decided that Lang's constitutional right to confrontation was not violated by the admission of the N-445 form we move on to address Lang's second challenge, whether admission of the form nonetheless violated the Federal Rules of Evidence proscription against hearsay. See, e.g., Bullcoming, 131 S. Ct. at 2720 (Sotomayor, J., concurring) (quoting Michigan v. Bryant, 131 S. Ct. 1143, 1155 (2011) ("When the primary purpose of a statement is not to create a record for trial the admissibility of [the] statement is the concern of state and federal rules of evidence, not the Confrontation Clause.") (internal quotation marks omitted)); see also Davis, 547 U.S. at 821 ("It is the testimonial character of the statement that separates it from other hearsay, that while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.").

Lang challenges the district court's admission of form N-445 under Fed. R. Evid. 803(8) -- the public records exception to hearsay. We review the legal interpretation of a rule of evidence de novo, but the decision to admit or exclude evidence is reviewed for an abuse of discretion. See United States v. Dowdell, 595 F.3d 50, 70 (1st Cir. 2010).

Generally speaking, the Federal Rules of Evidence preclude the use of hearsay at trial. Hearsay is defined as a "statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence

-12-

to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Nonetheless, Rule 803(8) provides an exception to this general rule and permits the admission of public records and reports. Two principal justifications for the rule are "the presumed trustworthiness of public documents prepared in the discharge of official functions, and the necessity of using such documents, due to the likelihood that a public official would have no independent memory of a particular action or entry where his duties require the constant repetition of routine tasks." Quezada, 754 F.2d at 1193 (cited with approval in Dowdell, 595 F.3d at 72).

There is one final piece to Rule 803(8). Though it is an exception to the general rule against hearsay, the rule itself contains an exclusion, sometimes referred to as the law enforcement exception, which precludes the admission of public records in criminal cases for matters observed by police officers and other law enforcement personnel. See Fed. R. Evid. 803(8)(A)(ii).[12]

Lang contends that form N-445 should not have been admitted at trial because it falls under this exception.[13]

_____

[12]At the time the parties filed their briefs with this court and appeared for oral argument, the relevant section was Rule 803(8)(B). However, the 2011 Supplement to the latest edition of the Federal Rules has since changed this. Consequently, any reference to the old rule, 803(8)(B), made by the parties or a court of law and relied on in this opinion, will be cited to as the new rule, 803(8)(A)(ii).

[13]Before the district court, the government relied on Fed. R. Evid. 803(6), the business records exception to hearsay, as an alternative to its Rule 803(8) argument. Because we agree with the district court that the form was admissible under Rule 803(8) we

According to Lang, "the [CIS] [a]gent was a law enforcement officer even though the job was not what the Government considers a part of the police power or law enforcement."  Lang proffers that under Rule 803, "[i]t makes no difference . . . if the agent is an Immigration and Customs Enforcement Agent or a Citizenship Immigration Service Agent" and that those "two types of agents are at least as close in relationship to law enforcement officers as the Patrol officer and dispatcher" in Davis.  See Davis, 547 U.S. at 823 n.2 ("If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers.  For purposes of this opinion (and without deciding the point), we consider their acts to be acts of the police.").  He further argues that the form was to be used primarily in court proceedings and therefore "should not have [been] admitted . . . under the . . . public records hearsay exception because that kind of admissibility had been squarely rejected by the Supreme Court [in Melendez-Diaz]."  See Melendez-Diaz, 129 S. Ct. at 2538 (citing Fed. R. Evid. 803 (8)) (holding that analysts' certificates of analysis stating that bags seized contained cocaine do not qualify as business or public records).  We disagree.

Assuming arguendo that Michaud's status as a CIS agent was equivalent to that of a law enforcement officer, an issue we

need not address the 803(6) argument.

-14-

need not decide, the present case concerns the introduction of documents related to an administrative proceeding for purposes of determining qualifications for naturalization.  That said, we cannot agree with Lang's contention that "[t]here is no difference between the certifications of drug weight and drug identification [at issue in Melendez-Diaz] and the [N-445 form] offered by the Government in [this] case."  To the contrary, we think there is a grave difference.  The Court in Melendez-Diaz made it painstakingly clear that "the analysts' certificates -- like police reports generated by law enforcement officials -- do not qualify as business or public records" because they are generated primarily for use in court, not for business, and therefore are excluded under Rule 803(8)(A)(ii).  Melendez-Diaz, 129 S. Ct. at 2538 (citing Fed. R. Evid. 803(8)).  The same cannot be said of form N-445, which was undoubtedly "created for the administration of an entity's affairs."  Id. at 2539.

Furthermore, this court, as well as several of our sister courts, has distinguished between documents produced in an "adversarial" setting and those produced "in a routine non-adversarial setting" for purposes of Rule 803(8)(A)(ii).  Dowdell, 595 F.3d at 70 (internal quotation marks and citation omitted).  In so doing, we announced that,

> [d]rawing a line at routine, non-adversarial documents would best comport with the purpose for which Congress originally approved the exception.  The Rule's enactment history

indicates that "the reason for this exclusion is that observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases."

Id. (citation omitted). The circumstances presented here certainly are not the "adversarial circumstances which might render a law enforcement officer's observations unreliable." Id. (quoting United States v. Union Nacional de Trabajadores, 576 F.2d 388, 391 (1st Cir. 1978) (internal quotation marks omitted)). Instead, form N-445 is "ministerial, non-adversarial information" and is therefore "admissible under Rule 803(8)[(A)(ii)], notwithstanding its documentation at the hands of law enforcement personnel." Id. at 72. While it is true that criminal charges can result, if, as is the case here, false evidence is elicited on the form, criminal charges are not the primary purpose of the administrative proceedings surrounding an application for naturalization. There was no abuse of discretion.

Having determined that form N-445 was properly admitted under the public records exception to the hearsay rule, we now move on to Lang's third and final argument.

C.      Unfair Prejudice

Lang's final argument is that he was unfairly prejudiced by the government's repeated reference at trial to his prior conviction for selling cocaine. Generally, we review a trial

court's ruling regarding unfair prejudice for abuse of discretion. United States v. Bartelho, 71 F.3d 436, 443-44 (1st Cir. 1995). However, because Lang failed to make any objection at trial, our review is only for plain error. See United States v. Walker, No. 10-1092, 2011 WL 5865652, at *10 (1st Cir. Nov. 23, 2011). Under this exacting standard, Lang "must show (1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks and citation omitted).

During its opening, the government made approximately eleven references to Lang's involvement with cocaine.[14] Through its

---

[14]For example, the government stated:

In the winter of 2004, the defendant, Phoeun Lang, sold cocaine. Then, when he applied to be naturalized as a United States citizen, he did not disclose that crime.
. . .
The defendant is charged with two crimes. Firstly, making false statements to a federal agency, and the second is unlawfully procuring or obtaining naturalization. An individual makes a false statement to a federal agency when, in his application to become naturalized as a US citizenship [sic], he voluntarily and intentionally conceals the fact that he's committed a crime. An individual unlawfully obtains naturalization when, in his application for naturalization and in obtaining naturalization, he conceals the fact that he sold cocaine.
. . .
The evidence is going to show to you that in the winter of 2004, the defendant trafficked cocaine. In November -- in New Hampshire in November of 2004, he sold cocaine. He did it again in December of 2004, and he did it again in January of 2005. He was later arrested for those crimes and eventually convicted. What you'll learn is

-17-

witness, Michaud, the government made an additional four references to the fact that Lang had "sold cocaine" and "sold drugs." References to Lang's prior involvement with cocaine were similarly made during the government's closing. Relying on the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), Lang argues that the government's reference to his prior involvement with cocaine was unfairly prejudicial because he had stipulated to his prior conviction.[15] Id. at 175-77, 190-92 (holding that district court abuses its discretion if it declines a defendant's offer to stipulate to a prior conviction and instead admits the full record of the prior conviction when the name or nature of the prior offense raises the risk of unfair prejudice,

---

that just a few months after he distributed cocaine in the winter of 2004, he applied to become a naturalized United States citizen.
. . .
You'll learn that on [the N-400] form, question 15 asks: "Have you ever committed a crime or offense for which you were not arrested?" And the defendant answered "no." That statement was false. That statement was false because the defendant had distributed cocaine on three separate occasions in the winter of 2004.

[15]Lang also relies on United States v. Coleman, 552 F.3d 853, 858 (D.C. Cir. 2009), for the proposition that "[f]ailure to prevent unfair prejudice caused by a prior record when the prior record has been stipulated to has been recognized . . . as plain error." We are unconvinced. First, Coleman is not controlling precedent in this Circuit. Second, the facts are distinguishable. See id. at 855 (where defendant was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), district court's reading of unredacted indictment to prospective jury pool, revealing defendant's prior felony convictions for crimes of violence constituted plain error).

-18-

and when the purpose of the evidence is solely to prove the element of prior conviction).  We disagree.

To begin, <u>Old Chief</u> is inapposite to the facts here.  In fact, the Court made clear that its decision in <u>Old Chief</u> was "limited to cases involving proof of felon status."  <u>Id.</u> at 183 n.7.  This is not that type of case.  Instead, here we are faced with charges of making a "false material statement" to DHS and "unlawfully applying for and obtaining naturalization." Additionally, unlike the defendant in <u>Old Chief</u>, Lang's status as a convicted drug felon was not an element of the charged offense. <u>Cf.</u> <u>Old Chief</u> 519 U.S. at 174-176.  Rather, the relevant question presented to the jury was whether Lang intentionally lied about <u>engaging in</u>, and <u>being arrested for</u>, crimes that would render him ineligible for naturalization.  Consequently, Lang's readiness to stipulate that he had been convicted of distributing cocaine failed to render unnecessary proof that he knowingly lied about his involvement with drugs at the time he confirmed the accuracy of forms N-400 and N-445.  There was no error, much less plain error.

## III.     CONCLUSION

For the reasons set forth above the admission of the N-445 did not violate Lang's right to confrontation, the district court did not abuse its discretion in admitting form N-445 as a public record, and the government's reference to Lang's involvement with cocaine was not unfairly prejudicial.  We affirm.