HOWARD, Circuit Judge
(dissenting in part).
I dissent only with respect to the majority’s conclusion that the district court’s decision to admit the Yahoo! reports and the NCMEC CyberTipline reports ran afoul of the defendant’s Sixth Amendment Confrontation Clause protection. From my vantage, the majority is taking an unjustified step beyond what current Supreme Court precedent dictates in the developing arena of what documents bearing the hallmarks of business records and offered as evidence in a criminal trial constitute or contain testimonial statements for purposes of the Confrontation Clause. Because I do not see the documents targeted by the majority as containing a testimonial statement in the manner advanced by the appellant, I would not disturb the district court’s decision to admit the documents.
The Sixth Amendment’s Confrontation Clause confers upon an accused in a criminal prosecution the right to be confronted with the witnesses against him. U.S. Const, amend. VI; see Bullcoming v. New Mexico, 564 U.S. -, 131 S.Ct. 2705, 2713, 180 L.Ed.2d 610 (2011); United States v. Phoeun Lang, 672 F.3d 17, 21 (1st Cir.2012). This constitutional mandate affords a criminal defendant procedural protection by guaranteeing that the reliability of certain evidence, tagged “testimonial hearsay,” can be tested by cross-examining the one “bearing] testimony” against him. Crawford v. Washington, 541 U.S. 36, 51, 53, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); accord Davis v. Washington, 547 U.S. 813, 823-24, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Of course, the reliability of all evidence offered against a criminal defendant is always at the forefront of a trial court’s gatekeeping role, but the Sixth Amendment guarantees the opportunity for a particular manner of testing reliability, cross-examination, for a particular type of evidence, testimonial out-of-court statements offered for the truth of the matter asserted by the declarant. See Williams v. Illinois, 567 U.S. -, 132 S.Ct. 2221, 2232-35, 183 L.Ed.2d 89 (2012) (plurality); Crawford, 541 U.S. at 59-60 n. 9, 124 S.Ct. 1354 (citing Tennessee v. Street, 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985)). Evidence offered by the government that is an out-of-court testimonial witness statement cannot be admitted at a criminal trial unless the declarant of that testimonial statement is unavailable and the accused has had an opportunity to cross-examine the declarant on a prior occasion. See Crawford, 541 U.S. at 59 & 60 n. 9, 124 S.Ct. 1354; see Lang, 672 F.3d at 22.
The Supreme Court has recited various formulations of the “core class of ‘testimonial’ statements” as including
*655 (1) “ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used proseeutorially,” (2) “extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,” and (3) “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.”
Lang, 672 F.3d at 22 (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. 1354) (ellipsis omitted). While the Court initially did not endorse any particular formulation as circumscribing the bounds of testimonial hearsay, see Davis, 547 U.S. at 822, 126 S.Ct. 2266, it seems to have since ratified the above list, at least as being illustrative. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309-10, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009); Lang, 672 F.3d at 22. And in recent years, the Court has considered the scope of “testimonial” statements, particularly in the police interrogation setting, see Davis, 547 U.S. 813, 126 S.Ct. 2266, and with respect to scientific reports, see Bullcoming, 131 S.Ct. 2705; Melendez-Diaz, 557 U.S. 305, 129 S.Ct. 2527; see also Williams, 132 S.Ct. 2221.
In this case, Cameron argued vigorously to the trial court that the various digital images and related materials that had been derived from Yahoo!, NCMEC and Google sources must be excluded from evidence unless the government produced at trial the percipient witness who found and seized the electronic contraband and transmitted it to the government. In one pleading defense counsel posited, “[t]he figurative elephant in the room revolves around whether Mr. Cameron must be given an opportunity to confront each and every witness who supplies evidence that the government will use to prove that Mr. Cameron committed the alleged offenses.” In his motion for a new trial, the defendant insisted that the “testimonial qualities” of the various evidence — particularly the Yahoo! evidence introduced by witness Lee— was “obvious.”
Failing to persuade the trial court, the defendant now brings his constitutional plaint before us. As the majority notes, Cameron does not parse out the testimonial nature of each of the various pieces of digital and documentary evidence originating from Yahoo!, NCMEC, and Google. Instead, he takes the global position that “any report which discloses the location where evidence was seized must be testimonial.” With a sweeping stroke, Cameron argues that because such reports attest to the location where the digital images themselves were found, they are “clearly testimonial statements” that are identical to a statement that “I found the drugs in the defendant’s car” or “I found the gun in the defendant’s garage.” To test the veracity of these purported statements about location that are embedded within the reports, the appellant claims that he was entitled to cross-examine the person(s) who found the records about how, when and where the CP images were located.
I agree with the majority that the admission of evidence pertaining to the Yahoo! Account Management Tool, the Yahoo! Login Tracker data, and the Google Hello Connection logs does not implicate the Confrontation Clause. I do not, however, view the Yahoo! reports (presented in the form of receipts to the judge sitting as fact finder), and by extension the NCMEC CyberTipline reports, as amounting to testimonial statements in the man *656 ner argued by the defendant and decided by the majority.[18]
To begin, I emphasize that the Sixth Amendment is concerned with testimonial statements that are being offered for the truth of the matter asserted. See Williams, 132 S.Ct. at 2232-35; Crawford, 541 U.S. at 59-60 n. 9, 124 S.Ct. 1354. And so, it is important to look to the government’s purpose in admitting the Yahoo! reports.
While the defendant likens the Yahoo! reports to witness testimony of the location of contraband, the government did not offer any Yahoo! report for the truth of any averment in it that the stored images found in the particular Yahoo! photo album actually were contraband or even “suspected” contraband. Indeed, the government was clear that even the illicit descriptive “original names” of some of the image files (not assigned by a Yahoo! employee) listed in the report’s table should not be relied on to assess the illegal nature of the actual digital images. Rather, the government provided the testimony of an expert in child abuse who analyzed each image in relation to the “Tanner stages” to establish that the sexually graphic images in fact depicted children within a certain age span.
Moreover, the appellant provides no record support to show that the district court, as the trier of fact in this case, somehow relied on the Yahoo! reports to determine whether or not the images themselves constituted child pornography. The trial court was quite clear that the documentary evidence was admitted for the purpose of providing a link between the images alleged to be child pornography that were found on the Yahoo! server, and the particular identified user name (also sometimes referred to in the evidence as “screen name” or “login name”) and IP address that Yahoo! associated with that user name. The trial court also referred to the various “ISP documents” admitted into evidence in relation to the image archives as “chain of custody evidence.”
Accordingly, the constitutional analysis is properly confined to whether an admitted Yahoo! report contains testimonial statements that the images listed in the report and provided as digital evidence were located in the photo album account associated with a particular, user name (such as “harddudeOOOO”) and a particular IP address Yahoo! associated with that user name (such as “76.179.26.185”). Certainly, the reports reflect this location connection. But a review of both Lee’s testimony explaining the process of data storage and retrieval followed by Yahoo!, as well as the reports themselves, leads to the conclusion that the Yahoo! reports do not contain any testimonial statements.
For his part, the defendant generally speaks of all of the records that accompany the digital images as “affidavits that attest to the location” of where the images were found, but he does not analyze each document type. Instead, he likens the sum of the reports in this case — including the Yahoo! reports — to the evidence at issue in Melendez-Diaz and Bullcoming, arguing that the records “were admitted as computer forensic evidence obtained by unknown persons using unknown methods and presented by substitute witnesses” in violation of his Sixth Amendment right to confrontation. The comparison, however, is inapt.
*657 The heart of the testimonial hearsay in Melendez-Diaz was a certification statement akin to an affidavit made by a state forensic laboratory analyst attesting to the fact that the forensically analyzed substance was cocaine; the substance had been seized by law enforcement and delivered to the state laboratory for analysis of its contents. 557 U.S. at 308, 129 S.Ct. 2527. The certificates were offered as substantive evidence to prove the truth of the assertion that the nature of the substance was actually cocaine, an assertion generated by a scientific forensic analysis specifically engaged in to produce evidence for use at a criminal proceeding. Id. at 310-11, 129 S.Ct. 2527.
The circumstances of Bullcoming are similar. The testimonial statement in that case consisted of a certification by an analyst akin to a “formalized signed document” attesting to the fact that a blood sample contained an alcohol content of “0.21 grams per hundred milliliters”; the blood had been drawn from the defendant at a local hospital in connection with a driving under the influence charge and delivered to the state laboratory by law enforcement for forensic analysis of its contents. 131 S.Ct. at 2710, 2716-17. The certificate was offered as substantive evidence to prove the truth of the assertion as to the level of alcohol content in the blood sample, an assertion generated by a scientific forensic analysis specifically engaged in to produce substantive evidence for use at a criminal trial. Id. at 2711, 2713, 2716-17.
Here, the defendant is left to argue that the purported statement in a Yahoo! report offered for its truth is that the digital images were found in the Yahoo! photo album tied to the identified user name and the associated IP address. For its part, the majority seizes on the IP addresses identified in the Yahoo! reports because in one instance a different IP address was recorded in the Account Management Tool for the identified user name. The majority surmises that both the government and the district court took the IP address identified in a Yahoo! report to be the one from which the most recent image of child pornography had been uploaded into a Yahoo! photo album. From this the majority concludes that the government used the Yahoo! reports to tie the defendant to the specific IP addresses from which child pornography images were uploaded. Even so, I part ways with the majority because the link in any given Yahoo! report between the incriminating images and the accompanying user name and IP address is not a testimonial statement.[19]
To the extent the connection between the identified user name, the associated IP address, and the digital images archived from that user’s photo album can be deemed a declarant statement, that location connection existed well before Yahoo! even received the customer complaint about the content of the images associated with the screen name “lilhottyohh”. Indeed, the thrust of Lee’s testimony was that the storage of the digital images and the associated account data on the Yahoo! servers was an essential part of the Yahoo! photo album service. The record indicates that the computer systems and retrieval tools for locating images in any given user’s photo album (along with stored account information gathered with the archive such as the associated IP address) *658 were the same as those Yahoo! uses to locate all information stored about a user on the servers for its ordinary business functions. It is helpful to amplify the record on this point.
As the majority notes, Yahoo! is an Internet Service Provider portal which, as Lee explained, is in the business of providing several internet services to its users, such as internet searching, email, “messenger,” and (as of the time of the criminal conduct at issue) a photo album service. Various types of information or data relating to Yahoo! users and the services that each user employed are stored on servers. Such stored information includes emails, email “address books,” “Mends” lists, user registration information, and login history. Data pertaining to the photo album service — the stored digital images — was handled no differently. This service allowed a Yahoo! user to load digital images from various sources — such as an email attachment or an internet site— to an internet photo album associated with that user’s Yahoo! account. The service enabled a user to store digital images on a Yahoo! server and then easily share the stored photo album with other internet users by sending them the URL link to the album’s internet location. Once loaded to the photo album, the digital images remained automatically stored on Yahoo! servers unless and until the user deleted them (although Yahoo! also could eliminate access to the images by deactivating a user’s account).
Lee’s testimony shows that each type of stored information or data pertaining to each Yahoo! user or “screen name” is accessed by Yahoo! employees using the same methodology. The method consists of a Yahoo! employee, such as one in the customer care department, inputting a user name into a particular retrieval tool associated with certain types of stored information, such as the Account Management Tool or Login Tracker. The computer tool then automatically accesses the stored information related to that tool and displays it for the Yahoo! employee to review. Some tools compile various data; the Account Management tool, for example, collects the IP address recorded when a user first creates an account and the registration information provided by that user, among other stored information. Lee testified that these systems of data storage and retrieval are relied upon by Yahoo! to provide reliable and accurate data on customer accounts in order to conduct its business as an ISP. Lee explained that the same systems and tools also are used to access stored data pertaining to users when Yahoo! responds to a search warrant or any other legal process.
There is absolutely no indication in this record that the archives for the digital images from photo albums associated with the various Yahoo! user names in this case (as well as the IP addresses and other account data included with each image archive) were created, generated, or developed outside of this routine administrative methodology for retrieving stored user account data — a process which itself necessarily links the location of the retrieved stored data to the user name inputted. That the retrieved digital images stored on the server were captured electronically for purposes of transmitting them to the legal department is no different from the location connection created between data and user each time other types of stored data are retrieved and printed (or otherwise transmitted) for review, such as a user’s login history, “Mends” list, or email “address book.” In short, the purported location statement made by the stored image archive itself (along with other accompanying stored user data), and reflected in the Yahoo! reports, was not made for the primary purpose of establishing or proving a *659 fact or past event for criminal prosecution, but for the very functioning of the ISP business operations. See generally Williams, 132 S.Ct. at 2243 (“the primary purpose of the [scientific] report, viewed objectively, was not to accuse petitioner or to create evidence for use at trial”); Bullcoming, 131 S.Ct. at 2714 n. 6 (“To rank as ‘testimonial,’ a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution.” (internal quotation marks and brackets omitted)); Melendez-Diaz, 557 U.S. at 324, 129 S.Ct. 2527 (noting that business record “having been created for the administration of an entity’s affairs and not for the purpose of establishing or proving some fact at trial ... are not testimonial”).[20]
Also, Lee testified that the Yahoo! reports electronically transmitted to NCMEC comprise the same image archives captured by a customer care employee (along with stored account information gathered with the archive); the only difference is that any images that the Yahoo! legal department employee does not suspect as containing child pornography are not included in the report. Thus, the location link between the images and the user’s account is simply memorialized by an administrative process when the archive is created, which is simply repeated in the Yahoo! report sent to NCMEC. Then, a Yahoo! report receipt is automatically generated via computer, including the sequential list of numeric “Legal Archive Tool” image names.
I disagree with the majority’s conclusion that the Yahoo! reports are distinct from the other documents targeted by the defendant in this case, such as the Account Management Tool, because “they convey an analysis that was performed using preexisting data” and make “an entirely new statement reflecting [ ] conclusions” drawn from such an “analysis.” I suppose that this could be the case if the government were using the Yahoo! reports for the truth of an assertion that the images in fact were child pornography or suspected child pornography. But, as I began, the government did nothing of the sort. The conveyance of any analysis that a Yahoo! employee performed to deem some images in certain user photo albums to be suspect was not the purpose of the exhibits’ admission. And, I might add, it is the purported location statement — linking the images (and other stored data) to the identified user name and the associated IP address — to which this appellant objects. The record reflects that the location connection was not generated by a forensic analysis performed to produce substantive evidence at a criminal trial in the manner that was central to the testimonial nature of the certification reports in both Melendez-Diaz and Bullcoming.
The majority emphasizes that (1) the retrieval process for the digital images in this case began once Yahoo! received a tip associating images of child pornography with a particular user’s account, (2) the particular Yahoo! reports at issue were generated as part of a process that Yahoo! developed to comply with its legal duty to report any apparent violation of federal child pornography laws to NCMEC, (3) the reports were delivered to NCMEC, which operates, in part, as a type of clearinghouse for ISP reports to law enforcement regarding suspected child pornography, and (4) the actual Yahoo! report documents (the receipts) did not exist before the discovery of the sus *660 pected criminal activity. These circumstances do not alter the conclusion that the putative statement that there is a location connection between user and stored data (including digital images and information relating to the Account Management Tool or the Login Tracker) pre-existed any customer complaint or other event that would trigger the retrieval of such data, and the process for retrieving the various stored data is not performed through a forensic analysis engaged in to produce substantive evidence at a criminal trial. And, as I have explained, any new statement about the content of the images containing suspected child pornography was not offered for the truth of the matter asserted.
In summary, while I agree with the majority that evidence does not escape testimonial hearsay status under the Confrontation Clause simply because it may otherwise bear the characteristics of a business record, I do not believe that the location link displayed in the Yahoo! reports amounts to a testimonial statement under current Supreme Court precedent or under our own cases. I disagree with the appellant that the holdings in Melendez-Diaz and Bullcoming compel a conclusion that admission of the various “accompanying reports” — which he labels as “computer forensic evidence” — required an opportunity to cross-examine the person(s) who actually located the stored digital images and created a corresponding archive associated with each user name photo album.[21] And, I see nothing in the most recent Supreme Court discourse on the Confrontation Clause to alter my view on the import of Melendez-Diaz and Bull-coming holdings under the facts of this record. See generally Williams, 132 S.Ct. 2221.
I respectfully dissent from the majority’s conclusion that admission of the Yahoo! reports and NCMEC CyberTipline reports[22] violated Cameron’s rights under the Confrontation Clause, and so I would affirm the appellant’s conviction on all counts.

. For the same reasons as the majority does, I refer solely to the Yahoo! reports when conducting the constitutional analysis here. I also note that numerous receipts of the Yahoo! reports were admitted into evidence and at times, I reference a report in the singular simply for ease in exposition.

. The majority begins its discussion on the testimonial nature of the reports by examining their facial features, focusing on the term "suspect” that is contained in some "fields” that list certain types of information, such as “Suspect IP Address.” I think it more likely that "suspect” is used as an adjective in the reports to delineate the suspicious address and user names, not, as the majority says, as a noun targeting a specific person.

. The "primary purpose” inquiry of the statement's "testimonial” nature focuses on the declarant’s purpose in making the statement. See Davis v. Washington, 547 U.S. 813, 822-23 n. 1, 826-28, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

. The defendant also suggests in his brief that his Sixth Amendment concerns would have been allayed had the government presented live testimony of a Yahoo! computer technician to explain and verify the accuracy of the company's software tools used to retrieve the digital images and account data. This tack, however, essentially concedes that the reports contain no witness testimony whatsoever and reduces his argument to one of authentication. If this is the appellant's strategy, then the majority’s footnote remark about Rule 803(6) probably suffices for the Yahoo! reports as well. In the end, though, I make no judgment on authentication because the issue before us is confined to the Sixth Amendment.

. With respect to the NCMEC CyberTipline reports, the majority concludes that the government appeared to rely on these documents as the sole evidence establishing the upload dates and times of the illegal images (the so-called "Image Upload Data”). The majority also appears to assess the record evidence to determine whether the government appropriately established through this NCMEC evidence the transporting-by-uploading element charged in the indictment. There is no need to consider these issues because the timing of image uploading is not part of the appellant's Sixth Amendment argument. There is also no need for me to separately analyze whether the NCMEC CyberTipline reports contain a testimonial statement that was offered for the truth of the matter asserted. For present purposes I take the government at its word that such evidence essentially parroted the substance of the Yahoo! reports. Again, I note that the defendant makes no attempt to parse the two types of documents when advancing his Sixth Amendment plaint.